# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| EDDIE WHITE,<br><br>        Plaintiff,<br><br>    v.<br><br>CHICAGO POLICE OFFICER KELLIE DOYLE (Star No. 4419), CHICAGO POLICE OFFICER M. HERNANDEZ (Star No. 17970), CHICAGO POLICE OFFICER R. AGUINAGA (Star No. 15), CHICAGO POLICE OFFICER D.E. WARD (Star No. 12288), and CHICAGO POLICE OFFICER E. REYES (Star No.13185)<br><br>        Defendants. | Case No. 12 C 2084<br><br>Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. For the reasons stated herein, the Motion is granted in favor of Defendant Reyes on all counts in which he is named. Summary judgment is granted in favor of all Defendants on Counts I and IV. The Motion is denied as to Count VI.

### I. BACKGROUND

Plaintiff Eddie White's (the "Plaintiff") claims arise out of his arrest and detention on June 17, 2011. That morning, Plaintiff went to the Cook County Jail (the "Jail") and inquired with a Cook County Sheriff's Officer about obtaining employment with one of the Jail's construction contractors. On the

Officer's instructions, Plaintiff proceeded around the Jail to a different location, where construction trucks were entering and leaving. Plaintiff walked into a fenced-in parking lot near "Post 10," an entrance to the Jail, where a trailer was located because he believed that the contractor was using the trailer. Inside the trailer, Plaintiff talked to a Cook County Deputy Sheriff, who told Plaintiff that he could not apply for a job at that site. Plaintiff then left the trailer. Although the parties dispute precisely what happened next, it is undisputed that a Sheriff's Officer handcuffed Plaintiff, accused him of trespassing, and called the Chicago Police Department ("CPD") for assistance.

Chicago Police Officers Kellie Doyle ("Doyle") and M. Hernandez ("Hernandez") responded to the call. When they arrived at the Jail, Doyle and Hernandez spoke to one or more Cook County Sheriff's Officers, who accused Plaintiff of trespassing on Jail property. Plaintiff could not hear the conversations, but every deponent who testified about the conversations said that Doyle and Hernandez were told that Plaintiff was trespassing. The record reveals some inconsistencies regarding the details of exactly what happened, such as which Sheriff's Officers were present at the site, which ones talked to Doyle and Hernandez, what was said, and how long Doyle and Hernandez remained at the Jail.

Shortly thereafter, around 10:40 a.m., Doyle and Hernandez arrested Plaintiff and drove him to the District 10 Police Station. Upon their arrival, Doyle and Hernandez completed various administrative tasks before White was received in lock-up at 12:45 p.m. Plaintiff was interviewed, inspected, fingerprinted, and photographed by CPD Officer Dannye Ward, the on-duty "lockup keeper." These intake procedures were completed by 1:00 p.m., at which point Plaintiff was placed in a cell and his fingerprints were sent to the CPD's "identity section." The identity section checks for warrants associated with fingerprints, a process that often takes between three and eight hours. At this time, no other detainees were in the District 10 lock up. Officer Ward's shift ended at 2:00 p.m.

CPD Captain Richard Aguinaga ("Aguinaga"), whose shift started at 1:30 p.m. that day, was the on-duty watch commander and the only person with authority to release arrestees from the District 10 lockup. Defendants assert that, per department policy, arrestees usually are not released from custody until their fingerprints have cleared the identity section. However, the CPD has a "General Order" that allows, but does not require, release before fingerprints have cleared, when three requirements are met: (1) the detainee was arrested for a misdemeanor that was not upgradable to a felony, (2) the detainee is not wanted by the CPD nor has any outstanding warrant that could be identified,

and (3) the detainee's identity has been established, such as with a driver's license. These requirements were met by 1:00 p.m. Pursuant to this order, Captain Aguinaga decided to release Plaintiff before his fingerprints cleared; he gave final approval of Plaintiff's charges at 7:16 p.m. At that point, CPD Officer E. Reyes ("Reyes") processed the paperwork so that Plaintiff could be released, and Plaintiff was released at 7:34 p.m.

On June 13, 2013, Plaintiff filed a Second Amended Complaint that asserted six counts against fourteen individual Defendants. R. 43. Claims against the Sheriff's Officers and several other Defendants have been dismissed voluntarily. The five remaining defendants – Doyle, Hernandez, Aguinaga, Ward, and Reyes – are all CPD Officers. Three counts remain: Count I, a § 1983 false arrest claim asserted against Doyle and Hernandez; Count IV, an Illinois false imprisonment claim asserted against all remaining Defendants; and Count VI, a § 1983 excessive detention claim, also asserted against all remaining Defendants. All five Defendants have moved pursuant to Rule 56 for summary judgment on all three counts.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court construes all facts and draws all reasonable

inferences in favor of the non-moving party. *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009).

## III. ANALYSIS

### A. Probable Cause

Defendants argue that Plaintiff cannot prevail on both Count I for false arrest and Count IV for false imprisonment because they had probable cause to arrest him. Probable cause is "an absolute bar" to both a § 1983 claim for false arrest and a claim of false imprisonment under Illinois Law. *McBride v. Grice,* 576 F.3d 703, 707 (7th Cir. 2009); *Poris v. Lake Holiday Prop. Owners Ass'n,* 983 N.E.2d 993, 1007 (Ill. 2013). "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride,* 576 F.3d at 707. "[W]hen a police officer receives information sufficient to raise a substantial chance of criminal activity from a person whose truthfulness he has no reason to doubt, that information is sufficient to establish probable cause." *Smith v. Lamz,* 321 F.3d 680, 685 (7th Cir. 2003).

In this case, the alleged crime was complete and Plaintiff already was handcuffed when Doyle and Hernandez arrived at the Jail. Doyle and Hernandez talked with Cook County Sheriff Sergeant James Moran ("Moran") and one or more additional Cook County Sheriff's officers. Although it is not clear which

Sheriff's Officers spoke with Doyle and Hernandez, it is undisputed that Doyle and Hernandez were informed that Plaintiff had trespassed. Correctional Officer Jesse Lopez testified that he told Doyle and Hernandez that Plaintiff "had been standing in front of the Post 10 sally port and refused to move." Ex. B, pp. 39:23-40:2. Moran testified that he informed Doyle and Hernandez that Plaintiff "was standing in the middle of the driveway blocking all the traffic trying to get into the [jail] complex." Ex. C, p. 53:14-16. Doyle testified that Moran told her and Hernandez that Plaintiff had been trespassing. Ex. D, p. 22:6-7. Doyle also testified that Moran provided to her alone a more detailed description of Plaintiff's actions and statements. Ex. D, p. 24:24-27:7. Hernandez similarly testified that she and Doyle were told that "[Plaintiff] had trespassed . . . after being told several times to leave." Ex. E, p. 21:7-9. Doyle and Hernandez arrested Plaintiff over his protest that he had done nothing wrong.

This uncontroverted evidence shows that Officers Doyle and Hernandez were informed multiple times, by Sheriff's Officers whose credibility they had no reason to question, that Plaintiff had trespassed. In these circumstances, a reasonable officer could have concluded that a crime had been committed. *See, Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 439 (7th Cir. 1986) (holding that a supermarket guard's statements to police

established probable cause even when the accused denied shoplifting and noting that "[p]olice have reasonable grounds to believe a guard at a supermarket").

Plaintiff concedes that he could not hear Doyle's and Hernandez's conversations with Moran and the other Sheriff's Officers. Also, Plaintiff fails to identify any evidence indicating that Doyle and Hernandez were not told that Plaintiff was trespassing. Instead, Plaintiff claims that a material question of fact exists because of discrepancies between the deponents' testimonies: they disagree over how many officers interacted with Doyle and Hernandez, with whom Doyle and Hernandez spoke, exactly what was said, how long the incident took, and what investigation was conducted before Plaintiff was taken into custody.

These factual disputes are not material because they do not affect the probable cause analysis in this case. Even the report of "a single witness . . . generally is sufficient" for probable cause, as long as there is no reason for an officer to be suspicious of the witness or information. *Beauchamp v. City of Noblesville, Ind.,* 320 F.3d 733, 743 (7th Cir. 2003). So Doyle and Hernandez had probable cause regardless of whether they spoke to one Sheriff's Officer or several. As to other minor discrepancies, the report of a single witness, much less several, need not be "unfailingly consistent to provide probable cause."

*Spiegel v. Cortese,* 196 F.3d 717, 725 (7th Cir. 1999). The essential inquiry remains whether "a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride,* 576 F.3d at 707. Plaintiff has not pointed to any evidence tending to show that a reasonable person would have doubted the Sheriff's Officers' accusations against Plaintiff.

Plaintiff's reliance on *Washington v. Haupert,* 481 F.3d 543 (7th Cir. 2007) is misplaced. In *Haupert,* a husband and wife were arrested for domestic battery even though they protested to the arresting officer that they had been merely "play-fighting." *Id.* at 548. The police officers saw evidence of what they believed was domestic violence, but no witness could corroborate the police officers' version of events. *Id.* Faced with conflicting evidence, the Seventh Circuit refused to "make credibility determinations" and denied the defendant officers' motion for summary judgment. *Id.* at 550. In this case, however, two deponents, Lopez and Moran, corroborated Doyle's and Hernandez's story, and there is no evidence that conflicts because Plaintiff concedes that he does not know what they were told. Plaintiff also fails to cite any other deponent who testified contrary to Doyle, Hernandez, Lopez, and Moran. Thus, *Haupert* has no bearing on this case.

Finally, the discrepancies regarding the extent of pre-arrest investigation are immaterial. After probable cause is established, law enforcement is not responsible for testing an arrestee's claims of innocence. *Spiegel,* 196 F.3d at 724. "It does not matter . . . whether the accused person denies the allegations. Police need not conduct an investigation but may arrest and let prosecutors and courts determine who is telling the truth." *Askew v. City of Chicago,* 440 F.3d 894, 895 (7th Cir. 2006). After hearing Moran's report, Doyle and Hernandez had no duty to investigate further. Of course, "[a]n officer should pursue reasonable avenues of investigation and may not close his eyes to facts that would clarify the situation." *McBride,* 576 F.3d at 707. But there is no evidence that Doyle and Hernandez closed their eyes to any facts that would have shown that Plaintiff was not trespassing. The factual disputes regarding what investigation took place are over how long Doyle and Hernandez spent and the Jail and whether they saw the ground upon which Plaintiff was alleged to have trespassed. Regardless of the how these factual disputes are resolved, the Defendant Officers reasonably could have believed that Plaintiff had committed a crime. Because the Officers had probable cause to arrest, summary judgment is granted in favor of all Defendants on Counts I and IV.

**B. Excessive Detention**

Defendants seek summary judgment on Count VI, Plaintiff's claim for excessive detention. The Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended detention following a warrantless arrest. *Gerstein v. Pugh,* 420 U.S. 103 (1975). A determination of probable cause within forty-eight hours is presumptively reasonable, but "unreasonable delays, even within the forty-eight hour period, may be constitutionally troublesome." *Chortek v. City of Milwaukee,* 356 F.3d 740, 746 (7th Cir. 2004). "A person arrested without a warrant," such as Plaintiff, "may be held prior to a judicial determination of probable cause for a brief period to carry out the administrative steps incident to arrest." *Ray v. City of Chicago,* 629 F.3d 660, 663 (7th Cir. 2011) (internal quotation omitted). But "the length of time taken to complete administrative steps incident to arrest must be reasonable," and police must provide "an explanation for the length of the . . . detention." *Chortek,* 356 F.3d at 746-47.

Here, there is no dispute that Plaintiff was arrested by Defendants Doyle and Hernandez at 10:40 a.m. for a nonviolent misdemeanor and taken to the District 10 police station. By 1:00 p.m., Plaintiff had fulfilled all of the requirements for him to be released before his fingerprints cleared: his identity had been established, his misdemeanor arrest would not be upgraded to

a felony, and there were no outstanding warrants for his arrest. Plaintiff was not released from police custody until 7:34 p.m., more than six-and-a-half hours later, and nearly nine hours after he was first arrested by the CPD.

Defendants have not offered any explanation why Plaintiff was detained for so long except to say that it took that long to complete the necessary administrative tasks. But they do not identify a single task that they completed after 1:00 p.m. and they have provided no justification for the six-and-a-half hour delay that followed. Plaintiff was arrested for a nonviolent misdemeanor – a circumstance that increases the burden on the police to expedite his release. *Gramenos,* 797 F.2d at 437 (indicating that the crime of arrest and the nature of the alleged misconduct affect what actions the police must take after arrest, which informs the excessive detention analysis). In addition, Plaintiff's detention spanned the entire afternoon and there were no other arrestees in the lock-up demanding Defendants' attention. The Supreme Court has explained that a delay can be justified for "late-night bookings where no magistrate is readily available" or where a necessary officer is "busy processing other suspects or securing the premises of an arrest." *Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 57 (1991). But those circumstances are not present here.

As the Seventh Circuit has explained, "detention must be justified, especially where, as in this case, there has been no independent appraisal of probable cause to arrest prior to the detention." *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1350 (7th Cir. 1985). In *Moore,* the court concluded that a four-hour delay could have been unreasonable, depending on the justification for the delay (an issue left for the district court on remand). *Id.* at 1350-51. A year later, the Seventh Circuit concluded again that detention for "four hours requires explanation." *Gramenos,* 797 F.2d at 437. Defendants have explained the first two and a half hours that Plaintiff spent in their custody, but the record lacks any justification for the six and a half that followed. The Court, therefore, cannot say as a matter of law that the detention was reasonable. Rather, the question must be left to a jury. *Lewis v. O'Grady,* 853 F.2d 1366, 1370 (7th Cir. 1988) (reversing directed verdict for police where "a reasonable jury could find that the administrative delay in [the plaintiff's] release was unreasonable").

### C. Defendant Reyes

Defendant Reyes has moved for summary judgment on the ground that he had no personal involvement in the alleged liberty deprivation. "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist,* 699 F.2d

864, 869 (7th Cir. 1983). Defendant Reyes processed Plaintiff's paperwork after the on-duty watch commander granted Plaintiff's release. There is no indication that Defendant Reyes participated in or caused the alleged excessive detention by performing this ministerial task. In his response brief, Plaintiff does not oppose this portion of the Motion. Thus, for both of these reasons, the Court grants summary judgment in favor of Defendant Reyes on all counts.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted in part and denied in part. Summary judgment is granted in favor of Defendant Reyes. Summary judgment is granted in favor of all remaining Defendants on Counts I and IV. Summary judgment is denied on Count VI.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

Date:9/22/2014